Good morning again. Judge Reimer, nice to see you again. Judge Alarcon, nice to see you again. Judge Cannella, yes, it's our first time. It's a pleasure to appear in front of you. As I see it, there's primarily four issues here, which I'll summarize as follows. There's a qualified immunity issue, which gets down to was the law clearly established when SCOOG was decided or was there some time after SCOOG was decided that it became clearly established. There's a probable cause issue, which, for purposes of this argument, I'll concede there may have been probable cause. My argument would simply be it's probable cause here is weak. Since the officers had already been to Mr. Sepatis' home that afternoon, they had discretion to tow his car. They could have towed it when they were there in the afternoon. They didn't. When they returned in the afternoon, they had discretion to tow it. They didn't have to. It's kind of the could have versus would have. But for his First Amendment activities, there's the intent issue and there's the causation issue. And, you know, I did spend a lot of time rereading the SCOOG and the Dietrich decisions, because I think those are what must guide me and this Court in analyzing this case. Why since Dietrich is the most recent case that attempts to reconcile where we are, wouldn't Woyden follow its balancing test approach here? Well, I think I read Dietrich as just adopting SCOOG and announcing the same balancing test. I would submit here that where you have issues of intent and causation, those typically go to a jury. Now, in the Dietrich case the evidence of retaliatory motive is very thin. And the evidence, you know, on the other side is pretty strong. I agree. But I would say we are much closer to SCOOG than we are to Dietrich. And notably, the Court in Dietrich held in favor of the defendants on the issue of causation. They didn't say the issue of intent was thin, other than there was no causation. The officer who issued the citation was not aware that the plaintiff the earlier day had gone to the ACLU and complained and that it was in the newspaper. The way I read Dietrich is there would have been strong evidence of intent if the officer who issued the citation knew about the complaint that was made the previous day. Since the officer didn't know about that complaint, the issue of intent merged with causation. Now, this case is much more on all fours with SCOOG, except in SCOOG, Mr. SCOOG had simply filed a lawsuit. And that lawsuit was ongoing when the events occurred that led to his arrest. Well, Mr. Cepadas did more than file a lawsuit. Mr. Cepadas prevailed in a lawsuit in a published decision that was well known to members  of the Justice Department. You know, that can't be an immunity forever from him ever getting arrested or getting in a ringer with a law enforcement agency. I mean, which is more or less what this comes down to. You know, file the lawsuit. And I think that's enough to keep me from ever getting in a ringer again. But in case it's not, I'm going to make sure that I'm protected by making a telephone call to the agency right in the middle of their investigating me for hit and run. Well, if he hadn't made the phone call, this car wouldn't have been towed. I suppose we can argue that he brought this on himself because he reminded the officers of his lawsuit. But that doesn't, it seems to me, that's an interesting argument to make. But it doesn't avoid the analysis, was the car towed for retaliatory motive? I want to go back to this probable cause issue because you kind of started out saying you were conceding it, but I wasn't quite sure that you were because then you started talking about how well there was and there wasn't. So are you saying that the probable cause somehow dissipated over the intervening time between, you know, the first encounter and the second encounter? Absolutely. How can that happen? I mean, he didn't admit that he was involved in the accident. It's because the towing was discretionary, Your Honor. And any time you have this ---- The towing is what you do about the probable cause. It's not the probable cause. The probable cause is whether he was involved in a hit and run or whatever. Well, I understand. Well, in Skoug, they said there was probable cause. And the case still went forward. So I'm just saying for purposes of argument, let's concede that the probable cause that a court or that you find as a matter of law there was probable cause, which is what happened in Skoug. The court in Skoug said there's probable cause. But the court went on to say there's issues of intent and causation that need to go to the jury. Because of Mr. Skoug's lawsuit, that raised an issue of causation and intent. There was no dispute in that case that the arresting officer was aware of his lawsuit. And now the issue came down to if he hadn't filed the lawsuit, would he have been arrested? Which gets down to the paradigm is just because you can arrest someone doesn't mean you would have arrested that person. And it's the could versus would. And there is the Gascon case that I cited in my reply brief stands for that proposition. When you get into these situations of retaliation, ultimately what I think the issue comes to the jury is if he had not filed the lawsuit, would they have towed his car? Even if you acknowledge they could have towed his car, they had discretion not to tow his car. And that was really the Skoug case. The analysis in Skoug really came down to that. Just because you could arrest him for videotaping you is the fact that he filed his lawsuit, the reason that you did arrest him. Because let's face it, I mean, there are hundreds of occasions every day where police officers see jaywalkers, see people maybe running red lights. We can think of a hundred things that occur every day where an officer exercises discretion to make an arrest or not make an arrest. Now, the question in this case is when they exercise the discretion in this case to file the lawsuit or not. And now we know that, yes, one could argue, and it's a very interesting defense, but I think this goes to the jury. Did Mr. Sapatos bring this on himself because if he hadn't called the police department and, you know, mouthed off and said, hey, you know, I sued you before, I might sue you again, did he bring it on himself? Maybe he did. But that seems to me that's not an issue for you to decide. That's an issue for a jury to decide by reminding the police officers and Sergeant Schiff, hey, I'm the guy who sued you and successfully four years ago, and I sued nine of your coworkers at Park Station. And Sergeant Schiff certainly knew who he was. Mr. Sapatos was on their radar. And I suppose one could argue, well, this guy, he's calling the police, he's thumbing his nose at them, but he hasn't. Is that illegal? No. Other than the fact that he made the phone call and then he got towed after that, in other words, the temporal proximity, is there any other evidence that suggests that the call was the trigger for the towing, for towing the car? Well, yes, because when the police officers were initially out there, they did not tow the car. But did they – is there anything that suggests that they made an affirmative decision at that point, not to tow, as opposed to just putting it off, I guess, is what I'm asking. Yes. Because if you look at the testimony of Officer Frost, the defendant in this case, and the Officer Krasmaski, the two officers who was there in the afternoon, inferences from their testimony is that they thought it was over. They thought when they went there, when they got his information, got his insurance information, gave it to Ms. Serksner, the neighbor whose car had been hit, and provided that information, which is usually what happens when you have any fender bender, the result is we don't, you know, if there's a hit and run, we want to – It was a hit and run. Yes, it was. Well, he gave that information. He denied that he was at home. That's true. That's true. So what they also didn't do at the original visit was to take any pictures, look for any scrapes, matches, whatever. That's correct. That's correct. And now, which – what inference do you want to draw from that? Because there's two – They hadn't finished. Well, there's – well, that's one inference. And the other inference is, is that they had finished. How? I mean, they hadn't done what they're supposed to do, which is – Well, no, well, no. Because it's a hit and run. No, well, no. The inference is they had done what they were supposed to do. Now, that's the issue that goes to the jury. Did – Officer Frost thought he was going home. Officer Kurzmaski went home. And it wasn't until – and Officer Frost is getting ready to go home, and he makes this comment to Sergeant Shipp, oh, by the way, I just got this call from Mr. Sepadis, blah, blah, blah. Sergeant Shipp, aha, oh, yeah, that guy, Mr. Sepadis. Oh, I think you should go out there and complete the investigation. Well, I believe it's going to be for a jury to decide whether that was discretionary and whether it was for a retaliatory motive. And I agree with you. They can argue that the real motive, a pure motive, would be that the investigation had to be completed. But another interesting fact here is that after they towed the car, supposedly for the purpose of investigating a hit-and-run, the car got immediately released, well, three days later. That was a different part of the police department. That wasn't the same fault. Exactly. But the inference is, is that this car was never going to be investigated for a hit-and-run accident. The police department could care less about investigating whether, you know, a little transfer paid on this car was going to prove a hit-and-run where no one got hurt and there was a little minor fender-bender. And now what inference are we going to draw from that? One inference to draw from that is that they knew when they towed it. I'm sorry, Your Honor. Thank you. I mean, if you just wrap up. Thank you. Ms. Osborne. May it please the Court. Your Honors, as you suggested, this case falls squarely along the lines of Dietrich v. John Oswego's Nugget. The Dietrich court said that there was almost always a weak inference of retaliation when the plaintiff and defendant have had prior negative interactions. And this is exactly what was the – what is the case here. The officers in the San Francisco Police Department who were involved in the prior lawsuit had no interaction with Sepadis during the incidents that give rise to this lawsuit, namely the tow. I want to just talk briefly about this probable cause issue. The district court correctly found that probable cause was relevant to the analysis here, the evidence, the quantum of evidence of probable cause. And here that quantum of evidence is the strongest that it could possibly be. As you heard, probable cause is the existence of probable causes conceded here. And rather than dissipating over the course of the investigation, that quantum of that amount of probable cause actually grew. The officers went out and interviewed the witness, Brian Heath. He testified – he spoke to the officers and told them what he had seen. They then observed the paint transfer on the vehicles. So it was only after that they had completed their investigation that they had the probable cause that they needed to tow the vehicle. Yeah, well, Mr. Scott argues that the fact that they didn't finish while they were there and only finished or went back after the irritating telephone call raises at least a triable issue, that they were acting out of retaliatory motive rather than to do something they needed to do for investigatory purposes. In fact, Your Honor, what the officers did was give Sepadis an opportunity to abate the situation by going out there and asking him, were you involved in this hit-and-run? His answer was no. And the officer's testimony and the undisputed fact is it is only if an individual admits to being a party to the hit-and-run that the situation can be abated. So, Your Honor, there is no evidence about what happened during the course of the day, what other duties the officers had. But the evidence is that Officer Frost was a rookie officer, and before he went home for the night, he reports to his supervising officer, Sergeant Schiff, to tell him what he's done. And it's then that Sergeant Schiff asks him, have you conducted a complete investigation? And the answer that this rookie officer gives is no. I understand that. But Mr. Scott argues he also raised the subject of the prior lawsuit, and in fact said, I did before successfully, I can do again. And that influenced Schiff, not just finishing an investigation of a fender-bender. Your Honor, there is no evidence. I want to be very clear about this. There is no evidence on the record in this case that Sepadis during that phone call threatened to sue the police again. The only testimony about that phone call, because Sepadis in his deposition actually denied making it, is Officer Frost's testimony. And Officer Frost's testimony is that Sepadis said something about having sued the police and mentioned Lieutenant Dudo's name. That is the sum total of the evidence about that phone call. There is absolutely no evidence of a threat of a future lawsuit. Did you say that Mr. Sepadis in his deposition denied even making the call? Yes. Sepadis himself testified the only contact he had with the officers during – on December 15, 2006, was the first interaction at his door when they went – In other words, when they came to ask him about it. When they came to ask him for his information. And then when he called Sergeant Schiff after his vehicle was towed, had a short matter-of-fact conversation about where his vehicle was and how he could retrieve it. I want to also point you to, in these – all these other retaliation cases, there is some specific evidence of intent. The officers said something to the plaintiff that suggested that they had a retaliatory motive. You're not saying – you're not saying there always – there can only be direct evidence of intent. I mean, circumstantial evidence has to work there as it does everywhere else. That is true. And this Court has shown – has identified three types of circumstantial evidence that can show retaliatory intent. That's proximity in time. The district court correctly found in this case that there is no proximity in time that would give rise to a retaliatory intent. There are – so I think that this case – What are the other two types? You said three types. What are the other two? There are three other types. Two other types. It's okay if you want to go on to your next point. It's the expression of opposition to the speech and then pretextual reasons offered for the action, the adverse action. In all those – none of those three types of circumstantial evidence exist here. And the reason there's no proximity in time, because Mr. Scott in his brief makes the point – well, it is. It was right after the phone call. The reason there's no proximity in time, I take it, is that – is that the underlying event that gives rise to the retaliatory motive is several years earlier. It's more than several years earlier, Your Honor. It's more than five years. It's five years earlier. But, yes, that's – that's exactly correct. I also want to point out that the knowledge of Sepadis and his prior lawsuit, it was common knowledge in the station. And Officer Cain, who first took in the call, recognized Sepadis' name, had himself been the recipient of prior phone calls by Sepadis. Now, of course, the undisputed fact is that there were no prior interactions before 2002, but Officer Cain had had interactions with Sepadis prior to that point, so more than four years before the tow. And Officer Cain did not say, go out and immediately tow this person's vehicle. So the only thing that changes over the course of the day is not the officer's knowledge of who Sepadis is. They know that all along. It's the rigor of their investigation, the fact that they've collected more evidence of probable cause. That's – that's what is – is the only evidence of what the officer's reason, the intent was in this case. I also want to point to the record evidence, Your Honors, that the district court cited when it correctly found that similar situated individuals were treated the same as Sepadis. Sergeant Schiff testified that he authorized many tows under similar circumstances. The district court correctly found that the undisputed evidence is that cars are routinely towed and impounded after hit-and-run incidents involving only property damage. So there's no testimony here that Sepadis was somehow treated differently than other people. In other cases where this Court has found retaliatory intent, it has been the case, for instance, in Beck v. City of Upland, where there was a policy that was maybe on the books but only exercised in the – in the plaintiff's case. And that's – that's simply not the case here. Sergeant Krimski testified that the vehicles are towed for misdemeanor hit-and-run accidents as a matter of course. On the qualified immunity point, this case is appropriate for qualified immunity under Dietrich. This Court only elaborated precisely what role probable cause should play in the analysis of a First Amendment retaliation claim in Dietrich, and then it held that the Court should weigh the very strong evidence of probable cause against weak evidence of retaliatory intent. In 2006, that law was not clear. And this – it was not clear that the officer's actions in this case fell within Skoug's ambit. In fact, as we found out after Dietrich, it became – it is now clear that their actions do not fall within Skoug and instead fall in – outside of the reach of Skoug as this Court articulated in Dietrich. Is it your position that there was no genuine issue, fact, and dispute as to whether the officers acted in retaliation or that there is such evidence but qualified immunity applies? My argument is that the Court need not get to the first question because qualified But if the Court does, there is no genuine issue of fact of retaliatory intent or causation. The Court has no further questions. Thank you. One second. My one second, Your Honor, is having read Skoug and Dietrich very carefully, I don't see how Dietrich changes Skoug one iota. I think they're entirely consistent. I think the only difference is the facts. Thank you very much, Counsel. Both of you. The matter just argued will be submitted. Thank you.
judges: Kennelly, Alarcon, Rymer